ESTATE OF THERESA FAIR, DECEASED.

[No. 11,390; decided November 19, 1892.]

Wills—Rules of Interpretation.—The interpretation of a will depends upon the intention of the testator, to be ascertained from a full view of everything contained within the four corners of the instrument.

Wills—Rules of Interpretation.—The intention of the testator, as gathered from the whole scheme of the will and all its provisions, must prevail.

Wills—Interpretation of Trusts.—Such a construction must be put upon a will as will uphold all its provisions and enable the trustees therein named to perform each and all of the trusts imposed upon them.

Wills.—The Intendment is that a Will as Written correctly manifests the intention of the testator, and the whole thereof.

Wills.—Effect to Every Part of a Will must be given, if possible.

Wills.—All Parts of a Will are to be Construed in relation to each other so as to form one consistent whole, if possible.

Wills—Modification of One Clause by Another.—An intent inferable from the language of a particular clause may be qualified or changed by other portions of the will evincing a different intent.

Wills.—The Intention of the Testator is the First and great object of inquiry in the interpretation of a will, and to this object technical rules must yield.

Wills—Construction.—Where a Testatrix Makes a Bequest of Money to one son to be paid when he attains the age of thirty-five years, and a bequest to another son to be paid when he attains the age of thirty years, and where she further provides that if either son dies the portion allotted him shall be paid to the other, and the first son dies without attaining the specified age and before the second attained the age of thirty years, an application by the surviving son before reaching thirty years of age for the portion allotted to the deceased son is premature and must be denied.

Theresa Fair died on September 13, 1891. The will, set forth in the opinion below, was admitted to probate on October 5, 1891.

On May 11, 1892, Charles L. Fair filed a petition wherein he alleged that his brother, James G. Fair, Jr., had died on February 12, 1892, under the age of thirty years, and without wife or lawful issue surviving him. He further alleged that by the terms of the will the testatrix bequeathed the sum of $500,000 to James G. Fair, Jr., and directed that the same be paid to him when he shall have attained the age of thirty-five years, and that, in case he should die without wife or lawful issue surviving him, the portion by said will so allotted to him should be paid to petitioner, and that petitioner is entitled to receive said sum of $500,000, and he prayed for distribution thereof to him.

At the time this petition was filed Charles L. Fair was twenty-five years of age.

In the answer to the petition the executors alleged that it was the intention of the testatrix, by her will, to prohibit petitioner from receiving any portion of her estate, and the executors from paying to him any portion of her estate, prior to his attaining the age of thirty years, except the monthly allowance of $500 specified in the will.

W. S. Goodfellow, for the petitioner.

R. S. Mesick, for the executors and trustees.

COFFEY, J.   The question presented in this case for deci-
sion by the court is, When should the trustee appointed by
the will pay to the petitioner under its terms the $500,000
therein primarily allotted to his brother, James G. Fair, Jr.,
as his portion of the estate of Theresa Fair, deceased, their
mother, the said James having died long before his portion
or that of Charles could by the terms of the will become due
and payable had James lived?

The petitioner claims that under the will the portion
allotted to James should be paid at once to him, while the
respondents contend that immediate payment thereof is for-
bidden by its terms, and that the trustees cannot comply with
the demands of the petitioner without violating their trust as
defined by the testatrix in her will.

The petitioner, Charles L. Fair, bases his claim of the right
to have paid to him without delay the share primarily allotted
to James upon two clauses of the will as follows:

"I give and bequeath to my son, James Graham Fair, Jr.,
the sum of $500,000, and direct the same to be paid to him
when he shall have attained the age of thirty-five years, but
not before then, and that meantime there shall be paid to
him monthly the sum of $500.

"In case my said son, James Graham Fair, Jr., die with-
out wife or lawful issue surviving him, the portion hereby
allotted to him shall be paid to my said son, Charles Lewis
Fair, if living, and, if not living, then to his surviving wife
or lawful issue, if any there be."

The will of the testatrix reads in full as follows:
"In the name of God, Amen.

"I, Theresa Fair, of the City and County of San Fran-
cisco, and State of California, of the age of forty years and
upwards, and being of sound mind and memory, do make,
publish and declare this my last will and testament in manner
following, that is to say:

"I hereby give, bequeath and devise all my real and personal estate, of what nature or kind soever and wheresoever situated, to John W. Mackay and Richard V. Dey, the executors of my last will and testament hereinafter nominated and appointed, in trust, for the payment of my just debts and the legacies and charges upon the said estate hereinafter specified, to be held and possessed by them, with power to sell and dispose of the same, or any part thereof, at public or private sale, at such time or times, and upon such terms and in such manner as to them shall seem meet, and to re-invest any surplus proceeds of such sales for the best interest of said estate until the full and complete disposition of said estate by them, which I hereby direct shall by them be made in compliance with the following:

"I give and bequeath to my daughter, Theresa Alice Fair, the sum of one million five hundred thousand dollars, and direct the same to be paid to her upon her attaining the age of twenty-five years, but not before then, and that meantime there shall be paid to. her monthly the sum of twenty-five hundred dollars.

"I give and bequeath to my daughter, Virginia Fair, the sum of one million five hundred thousand dollars, and direct the same to be paid to her upon her attaining the age of twenty-five years, but not before then, and that meantime there shall be paid to her monthly the sum of twenty-five hundred dollars.

"I give and bequeath to my son, James Graham Fair, Jr.. the sum of five hundred thousand dollars, and direct the same to be paid to him when he shall have attained the age of thirty-five years, but not before then, and that meantime there shall be paid to him monthly the sum of five hundred dollars.

"I give and bequeath to my son, Charles Lewis Fair, the sum of five hundred thousand dollars, and direct the same to be paid to him when he shall have attained the age of thirty years, but not before then, and that meantime there shall be paid to him monthly the sum of five hundred dollars.

"The rest and residue of my estate I give and bequeath to my two daughters, above named, to be divided between them

equally, share and share alike, and to be paid to them when my said daughter Virginia shall have attained the age of twenty-five years.

"In case my said son, James Graham Fair, Jr., shall die without wife or lawful issue surviving him, the portion allotted to him shall be paid to my said son, Charles Lewis Fair, if living, and, if not living, then to his surviving wife or lawful issue, if any there be.

"In case my said son, Charles Lewis Fair, shall die without wife or lawful issue surviving him, the portion allotted to him shall be paid to the said James Graham Fair, Jr., if living, and, if not living, then to his surviving wife or lawful issue, if any there be.

"In case both the said James Graham Fair, Jr., and Charles Lewis Fair shall die without wife or lawful issue surviving them, then the portions allotted them shall be paid to my said daughters, Theresa Alice Fair and Virginia Fair, share and share alike.

"In case of the death of my said daughter, Theresa Alice Fair, without husband or child surviving her, the portion allotted to her shall be paid, one-half to my daughter, Virginia Fair, and the other half in equal portions to the said James Graham Fair, Jr., and Charles Lewis Fair.

"And in case of the death of my said daughter, Virginia Fair, without husband or child surviving her, the portion allotted to her shall be paid, one-half to my daughter, Theresa Alice Fair, and the other half in equal portions to my sons, James Graham Fair, Jr., and Charles Lewis Fair, aforesaid.

"I hereby nominate and appoint my daughter, Theresa Alice Fair, to be sole guardian of the person and estate of my said daughter, Virginia Fair, during the period of her minority.

"I hereby nominate and appoint the aforesaid John W. Mackay and Richard V. Dey to be the executors of this my last will and testament, hereby revoking all former wills by me made; and I do further direct that no bonds be required of my said executors.

"It is my special wish and I request and direct that R. S. Mesick, Esq., act as the legal adviser of the executors of my will in the settlement and distribution of my estate.

"In witness whereof, I have hereunto set my hand and seal, this eighteenth day of April, in the year of our Lord one thousand eight hundred and eighty-eight.

                    "THERESA FAIR.   (Seal.)"

Attestation clause and witnesses' subscription follow in due form of law.

The intention of the testatrix, as gathered from the whole scheme of the will and all its provisions, must prevail; and such a construction must be put upon that instrument as will uphold all its provisions and enable the trustees to perform each and all of the trusts imposed upon them thereby.

The scheme of the testatrix was to make provision for each of the children in the form of a temporary monthly allowance, and to give them full possession of the principal sum bequeathed to them when they should attain a certain prescribed age. The one purpose of the testatrix appears to have been to make adequate provision for the children and their maintenance in life. The postponement of possession of their legacies was a precautionary measure to guard against the principal sum being lost or wasted, and the legatees being left without provision for their maintenance. This purpose is manifested in the will, and forms its prominent feature; but although the attention of the testatrix was bent upon this subject, petitioner's counsel contends that she did not think proper to continue to apply the same protective measures to legacies payable over to a survivor, and counsel conjectures that her reason may have been that such measures were not necessary, inasmuch as such survivor had already been protected to the extent of his original legacy, which would be preserved in any event, and so no disastrous consequence would ensue, even if the original legacy should be lost or wasted.

This will is in writing, and is required by law so to be. Its phraseology, as well as extrinsic evidence, shows that it was prepared by an attorney. The intendment must be that the will, as written, correctly manifests the intention of the testatrix, and the whole thereof. The express words of the will are that in case of the death of James "the portion allotted to him shall be paid to my son, Charles Lewis Fair, if living," and counsel for petitioner claims that to annex

the further condition—"and if he be then of the age of thirty years"—would be manifestly to add ·to and vary the terms of the will. This cannot be done, says the counsel, even if it were conceded or absolutely demonstrated as an extrinsic fact that the testatrix intended the gift to be so conditioned or limited. It is not the intention simply, but the expressed intention, of the testatrix to which effect must be given.

There are here two separate legacies; one is given to James directly, the other is given to Charles directly. By virtue of subsequent clauses of the will, in the case of death, the one succeeds to the other's legacy. Charles claims this $500,000, not under the clause making original provision for him, but under the subsequent clause substituting him for his brother as to the latter's legacy. By what authority, asks the counsel for petitioner, can a limitation annexed to the first legacy only be engrafted upon the second also? Such, the counsel asserts, is not the expressed will of the testatrix—to say that she so intended, or that such would be in harmony with her general purpose, is to indulge in mere conjecture. It may or may not have been so; the actual intent cannot now be positively ascertained. The court is confined to the will as it is written.

The court cannot agree with counsel for petitioner in his contention that the actual intent of the testatrix cannot be ascertained from the will as it is written. On the contrary, the design and scheme of the testatrix are ascertainable and expressed with sufficient clearness, if not with absolute accuracy of verbal expression. The design and scheme were, without doubt, as gathered from the entire instrument, to secure to the children, upon attaining a certain age, the full possession and enjoyment of the portion of the estate allotted to them, and meanwhile to secure to them an income sufficient to support their station in society.

It is clear to the court, from the study of the whole will, that James was not to enter into the enjoyment of his portion until he should have reached the age of thirty-five years, nor Charles until thirty years, and that neither was to have more than a monthly allowance until the expiration of either period. To give to either before that point of time any por-

tion of the capital would be to violate the intention of the testatrix. In carrying this intention into effect it is permissible to resort to any reasonable intendment.

It should seem unnecessary to quote the commonplaces of construction in this connection, as, for example, that the interpretation of a will must depend upon the intention of the testator, to be ascertained from a full view of everything contained within the "four corners" of the instrument; or, that all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; or, that an intent inferable from the language of a particular clause may be qualified or changed by other portions of the will evincing a different intent, for the substance and intent, rather than words, are to control.

The intention of the testatrix is the first and great object of inquiry, and to this object technical rules to a certain extent are made subservient.

It is a cardinal rule of construction that effect must be given, if possible, to every part of a will.

There is, perhaps, no rule of construction of wider application of wills, or which oftener requires to be acted upon, than that every portion of the instrument must be made to have its just operation, unless there arises some invincible repugnance, or else some portion is absolutely unintelligible.

Applying these familiar principles and rules to this will, it is manifest that the testatrix imposed upon each of the legatees a period of waiting for the enjoyment of their legacies, except the monthly allowances, which is not only binding upon the legatees, but also upon the trustees whose duties under the will are therein defined with as much precision as the rights of the legatees.

No reason can be imagined why the testatrix should have been less solicitous concerning the $500,000 in question than concerning the $500,000 primarily given by her to the petitioner, or why she should intend to make any distinction between the two sums as to the term of waiting. It seems to the court that in order to set aside or modify the rule of waiting imposed by the will, plain and specific language should be discovered in that instrument manifesting an intention on the part of the testatrix so to do.

The clause in the will upon which the petitioner relies for immediate payment of the legacy in question contains no word indicating when the trustees shall pay the amount. Nor does that clause define the time when the death of the legatee, James, must occur in order that his share may become payable to Charles. The clause is elliptical both in respect of when the death of James must occur and when the share upon the occurrence of his death must be paid by the trustees to the petitioner.

It is certain that the testatrix did not intend that in case James died after having attained the age of thirty-five years, and after having been put in possession of the legacy by the trustees, it should ever revert to the petitioner or be called back into the hands of the trustees. The time when the death of James must occur to entitle Charles to be paid this share becomes necessarily a matter of construction and interpretation upon the reading and consideration of every other clause in the will. So, it may be said of the time when the trustees should pay to the petitioner the share allotted to James, it is a matter to be gathered from all the provisions contained in the will, and its general purport and purpose.

It seems to the court that no one can read the clauses of the will preceding that upon which the petitioner relies without being convinced that the testatrix had no intention of authorizing the payment to Charles of anything mentioned in the will, except the monthly allowance, prior to his attaining the age of thirty (30) years; and that the will must be read as an entirety, and the conditions and limitations which precede the clause relied upon must be applied thereto, and, when so read, the will is destructive of the claim of petitioner.

It is the opinion of the court that the clause relied upon by the petitioner cannot be isolated from the context and construed as a separable section of the testament, but that it must be read and construed as an integral portion of that instrument, to be interpreted with the other constituents of the will.

It follows that the petition for partial distribution filed herein is prematurely presented, and should be and it is denied.

The Principal Case was Affirmed in 103 Cal. 342, 37 Pac. 406.

In Construing a Will the Intention of the Testator should govern, and that intention should be ascertained from the words of the will itself: Estate of Hale, 2 Cof. Pro. Dec. 191; Estate of Pearsons, 2 Cof. Pro. Dec. 250; Estate of Berton, 2 Cof. Pro. Dec. 319.

All Parts of a Will Should be Considered in relation to each other, so as to form one consistent whole. Every portion of the instrument should be made to have its just operation, if possible: Estate of Maxwell, 1 Cof. Pro. Dec. 145; Estate of Behrmann, 2 Cof. Pro. Dec. 513; Estate of Berton, 2 Cof. Pro. Dec. 319.